## THE JEAN JADOT.

### RADIO CIRCULAR CO., Inc., v. COMPAGNIE MARITIME BELGE (LLOYD ROYAL) SOCIÉTÉ ANONYME.

No. 13622.

District Court, E. D. New York.
Sept. 12, 1934.

Burlingham, Veeder, Clark & Hupper, of New York City (John L. Galey, of New York City, of counsel), for libelant.

Kirlin, Campbell, Hickox, Keating & Mc-Grann, of New York City (L. deGrove Potter, of New York City, of counsel), for respondent.

**CAMPBELL, District Judge.**

This is a hearing on exceptions to the amended libel herein.

Respondent has excepted to the whole of the amended libel, and also specifically to articles fourth, fifth, eighth, ninth, and tenth thereof.

The amended libel alleges in substance as follows:

(1) On December 1, 1933, libelant delivered to respondent at New York certain merchandise and respondent issued its bill of lading agreeing to transport said merchandise to Antwerp, Belgium, on the steamship Jean Jadot, to be delivered to shipper's order, notify Melorad, Geneva. A copy of the bill of lading is annexed to the amended libel.

(2) Thereafter libelant drew a draft for the purchase price on Melorad, and caused said draft to be forwarded, with the bill of lading indorsed, to a bank, with instructions to surrender said bill only on payment of the draft.

(3) After arrival of the vessel at Antwerp, respondent, through officers who charged it with privity and knowledge, wrongfully delivered the goods to another carrier for transportation to Geneva, where they were seized by the public authorities at the instance of some owner of patent rights. Thereafter the overcarriage was ratified by the responsible officers of the respondent.

(4) Thereafter libelant tendered to respondent the bill of lading, but respondent was unable to return goods, and respondent has failed and refused to deliver them to libelant. It was alleged that the facts set forth constitute a deviation which deprives respondent of the benefit of the provisions of article 16 of the bill of lading.

(5) It is alleged in article ninth that under the laws of Belgium as well as the United States of America libelant was excused from complying with clause 16 of the bill of lading.

(6) It is further alleged that in any event the respondent has waived compliance with the aforesaid provisions of the bill of lading.

(7) Lastly, it is alleged that in any event claim and suit were brought within a reasonable time.

The principal question here presented is whether there was a deviation vitiating the contract of carriage.

The steamship company by its bill of lading agreed to carry the merchandise by the steamship Jean Jadot to Antwerp, Belgium, shipper's order, notify Melorad, Geneva, Switzerland.

The merchandise was carried by the steamship Jean Jadot to Antwerp, Belgium, and there discharged by the ship, but, instead of delivering the merchandise at Antwerp to the holder of the bill of lading, on a surrender thereof, the respondent turned the merchandise over to another carrier, to be delivered to Melorad, Geneva, Switzerland.

In order to determine the question here presented, we must first ascertain what is meant by the word "deviation."

Deviation has been frequently defined. In Hostetter v. Park, 137 U. S. 30, at page 40, 11 S. Ct. 1, 4, 34 L. Ed. 568, where the Supreme Court said: "A 'deviation' is defined to be 'a voluntary departure, without necessity or reasonable cause, from the regular and usual course' of a voyage. * * *"

See, also, Constable v. National Steamship Co., 154 U. S. 51, 66, 14 S. Ct. 1062, 38 L. Ed. 903; The Willdomino, 272 U. S. 718, 727, 47 S. Ct. 261, 71 L. Ed. 491; G. W. Sheldon & Co. v. Hamburg Amer. P.-A.-G. (C. C. A.) 28 F.(2d) 249, 251; The Indrapura (D. C.) 171 F. 929, 931; The Citta Di Messina (D. C.) 169 F. 472, 474.

The merchandise in question was carried to the destination provided in the bill of lading, and there was no deviation, but there was misdelivery. Bank of California v. International Mercantile M. Co. (C. C. A.) 64 F.(2d) 97, certiorari denied, 290 U. S. 649, 54 S. Ct. 66, 78 L. Ed. 563; M. & T. Trust Co. v. Export S. S. Corp., 262 N. Y. 92, 186 N. E. 214; General Electric Co. v. Argonaut Steamship Line (D. C. E. D. N. Y.) 7 F. Supp. 710, opinion of Galston, J., July 10, 1934. See, also, Estherville Produce Co. v.

Chicago, R. I. & P. R. Co. (C. C. A.) 57 F. (2d) 50.

On behalf of libelant it is contended that there was not a misdelivery but an overcarriage by the respondent in turning over the goods to a carrier, to carry them to Geneva, Switzerland.

In support of its contention, libelant cites: Niles-Bement-Pond Co. v. Dampkiesaktieselskabet Balto (C. C. A.) 282 F. 235; Calderon v. Atlas Steamship Co., 170 U. S. 272, 18 S. Ct. 588, 42 L. Ed. 1033; Cunard Steamship Co. v. Buerger, 1927 App. Cas. 1; Sargant v. East Asiatic Co., 85 L. J. J. B. 277; G. W. Sheldon & Co. v. Hamburg Amer. P.-A.-G., supra; Rosenberg Bros. & Co. v. U. S. S. B. E. F. Corp. (D. C.) 7 F.(2d) 893; Smith v. U. S. S. B. Emergency Fleet Corp. (C. C. A.) 26 F.(2d) 337; Dibble v. Morgan, 7 Fed. Cas. 648, No. 3,881; Dean v. Vaccaro, 2 Head (Tenn.) 488, 75 Am. Dec. 744.

In all these cases, involving deviation through overcarriage, the cargo was carried forward by the carrying vessel itself either in sailing past the port of destination or in failing to discharge the goods at destination and carrying them on, and this is likewise held in The Poznan (D. C.) 276 F. 418; Blank & Co. v. United States (D. C.) 13 F. (2d) 394; and The Emelia S. de Perez (D. C.) 287 F. 361.

I have not found that misdelivery has been held to constitute a deviation.

All the authorities I have examined are cases of literal deviation, cases of unreasonable delay, and cases of such improper stowage as to amount to a different venture than that contemplated by the parties. See Marine Insurance Co. v. Tucker, 3 Cranch, 357, 2 L. Ed. 466; Maryland Insurance Co. v. Woods, 6 Cranch, 29, 3 L. Ed. 143; Maryland Insurance Co. v. Le Roy, 7 Cranch, 26, 3 L. Ed. 257; Oliver v. Maryland Insurance Co., 7 Cranch, 487, 3 L. Ed. 414; Hughes v. Union Insurance Co., 3 Wheat. 159, 4 L. Ed. 357; Columbian Insurance Co. v. Catlett, 12 Wheat. 383, 6 L. Ed. 664; Hearne v. New England Mut. Marine Insurance Co., 20 Wall. 488, 22 L. Ed. 395; Filley v. Pope, 115 U. S. 213, 6 S. Ct. 19, 29 L. Ed. 372; Hostetter v. Park, supra; Constable v. National Steamship Co., supra; St. Johns Corp. v. S. A. Companhia Geral Commercial, 263 U. S. 119, 44 S. Ct. 30, 68 L. Ed. 201; The Willdomino, supra; The Malcolm Baxter, Jr., 277 U. S. 323, 48 S. Ct. 516, 72 L. Ed. 901.

In this case there was no deviation in the voyage for which the bill of lading was issued.

That of which libelant complains is the handing over of the merchandise to another carrier after the completion of the voyage, and the discharge of the cargo at Antwerp, and its seizure by the government, and I cannot distinguish between that and the handing over or delivery of the cargo to any wrong party which is a misdelivery.

Libelant presents a lengthy argument and authorities to show that there can be deviation with reference to land carriage, which, of course, is true if the deviation take place before the arrival and discharge of the merchandise at the place to which it is to be carried by the terms of the bill of lading. But, the merchandise having been discharged at Antwerp, the voyage was ended, and there could be no deviation by the subsequent act of delivering the merchandise to another carrier, although that was a misdelivery.

There was no breach of contract which operated to relieve the shipper from compliance with the bill of lading terms, as the carrier has not been guilty of a willful wrong or of attempting to convert the goods to its own use. Bank of California v. International Mercantile M. Co., supra, certiorari denied, supra.

The turning over of the merchandise to the land carrier was a mere mistake or act of negligence, and there is no evidence to show that the respondent profited or had any improper motive or intent in dealing with the goods in the way it did.

As libelant may amend, I will pass on the following exceptions to specific articles:

█ The article fourth undoubtedly contains many allegations that are mere conclusions, but it does allege and make part of its libel the bill of lading as Exhibit A, the bill of lading described in the earlier portion of the libel, and that is an allegation of fact.

The article fifth is not objectionable in form.

The article eighth pleads nothing but a conclusion of law.

The article ninth does not properly plead a foreign statute.

█ The article tenth seems to me to contain much that is not properly pleaded, but libelant has a right to plead facts showing waiver of notice, but failure to notify the libelant, or the holder of the bill of lading, of the arrival of the goods, or of the time of the com-

pletion of the vessel's discharge, are not defenses, as the consignee is bound to be on hand to take the goods when they come to hand. Constable v. National Steamship Co., supra.

The exception to the amended libel on the ground that it does not state facts sufficient to constitute a cause of action is sustained and the amended libel dismissed, but with leave to the libelant to serve an amended libel, within ten days after service upon its attorneys of a copy of the order to be entered hereon.